Good morning, honors, this is Glenda, and I'm going to call to order on behalf of our students and honors. Please reserve two minutes for rebuttal. Also, I want to say, honors, though, my suggestion is to start, I would like to go over here, I would like to get your second argument, and then we may have a brief, because if you're doing the honors, then in this case, it would imply to you that under a dollar standard, or even a hundred, yes, a standard, it is critically clear that the court is in discretion, clearly aired, my name's on the house, and it has been determined. We are in disrecord, and we ask that you refer to the construction of the hearing. We are in disrecord, and we ask that you refer to the construction of the hearing. In disrecord, we ask that you take discretion and clearly air, on the basis of whether it's a negative case, or a solid case, that you dispatch and convey as you call it, a fair review. In this case, the court has insufficient information to determine that it's a letter that you have in the construction of the H.R. 15. It's not a rebuttal. As Congress knows, this issue is not an out-of-the-counter issue, and even a civilian allergy is not an out-of-the-counter issue. As a judge, you may not be safe if you're knowing that what it is that you're buying. In this case, we help members to demonstrate the constructive discretion and help it fail to be assertive. The court's ruling, in this case, basically wanted that the fact that there was Mr. Luttrell's bracelet, and more, in the State Department, plus the fact that he was in the H.R., was sufficient to find that Mr. Luttrell was in the district head, and that he was safe. So, if this is not a fair review, take discretion, and convey what you're seeing in the apartment with other courts. Yes, Your Honor. They were in the apartment. I saw Mr. Luttrell in the hand. He is on the phone with Mr. Luttrell. The indication that there's not any specific support is that we are engaging in a medical institution review. There's no information about the appointment of the medical institution. And we, in the area, didn't have specific information about the appointment of Mr. Luttrell. We didn't get the residence. We didn't get his residence. The probation email report basically said that because Mr. Luttrell, he'd been talking to the State Department, and the district, and the county, and the federal, Mr. Luttrell was in the apartment. He was speaking to the State Department. He was talking to the district. But, again, that's kind of the same thing. I'm always not in that apartment. I was in the district. It's not on the second floor where the doors were closing, the doors were closing. I was in the district. I was in the district. I was in the district. I was in the district. And this is an area that exists, and we are engaging in a medical institution review. And we are engaging in a medical institution review. So, there's a good amount of reason for that. That's a good amount of reason to think it's possible. But, it could lead us to the idea that this was a community institution review. I can understand that. But, I just want to point to you, there are apartments, there are communities that are able to be, or that you can be in, such as the apartment that you've got in New York City. It is safe to say that it also is completely against the standards of the construction commission. And there was no findings regarding the knowledge that it showed. And if you wanted to know about that, that can now be in the records for finding any information. So, any time to get your control over anything else. Excuse me. Your best case is on Tulsa. What do you want to do? Do you want to go to Tulsa? Without those cases. The money's to use those cases. That's what that was. Tulsa, I don't understand. Is that even right? I don't believe Tulsa has any of those cases. I don't know. Maybe not. Maybe it's not right. I can't find any more on the record that Tulsa-wide cases were actually considered in Tulsa. I've heard. Turing has seen those cases. I've heard. And I would say, clearly, those cases were knocked out. It's just a long period of time. It's a very long time. You're away. It's a significant reduction in your time, of course. But it seems for us to go that way now is just too difficult. But I want to hear your thoughts on that. We're going to go your way. I'm going to stick with all the way we want to go. And then we're going to turn to you. Hi, everybody. My question to you is this one. In the elections, people did not know that the arguments were made in the Trump administration. And he had to, again, the former government had to show that he was trying to step up. And so, we're not going to debate this. I'm not going to debate it. I don't. But, again, they said that he wasn't saying that conventionally. You know, there's not any such thing as such a convention. It's just kind of a law. So, I don't think that it's a convention on any of those cases. What excuse the court for making this? There are findings that you just can't discern whether the president had the Trump administration. Did he have credibility? Did he have knowledge of the DHS? Did he have any control over it? I think what the court found, basically, was the fact that he was still the first lady of the floor in the bedroom, and the fact that he is now the associate attorney on the doorstep in the back. And so, it wasn't a question of me. I think it's very government's position that he was. The rest of you come down to the apartment. Are you trying to get keys to the apartment? Maybe you got them. I'm just wondering. Also, I have an incentive to keep the weapon there, even if it's not to keep the weapon. I think this is what the situation is. So, I'm not concerned. I think the court finds that it's not so. I mean, there are ways to support him up here, but I think the court needs to do just that. Also, I have to admit, if you try to take the vessel off the surface, you're going to have to follow a series of steps. Hello. Yes. Yes. Sure. Okay. The court states that they are looking for a woman in a closet, and we would be interested to know if that's the case. I noticed that, too. That's what I was going to ask about, because I was lost at first. What? She was in a closet. Yes. She was in a closet. She came through the rooms and things like that. She may have come here in the closet, which would clarify the position of the family. That would be interesting. That would be interesting. Yes. Yes.  Yes. Yes. Yes.   Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes.      It did not occur to me at the time that疫 vouchers were running out in colleges that you could have tests for structural variables. Estimating the sensibilities of the tumbler in the kitchen, you are aware that the increased possibility of having restaurants, morning sessions in real kindred school areas, is the balance of very good sin digital technology. It is a key for people coming. People can visit it to hear the parties and what these are about. Shit that there was no information, with no institutional knowledge or intervention. CalEDx needed to gain access to the data, so that they knew about it and hide it as well, since somebody who's going to be studying infrastructure understands cell producers in the law. So CalEDx needed to identify who was going to be studying infrastructure and who was going to be studying infrastructure, and who was going to be studying infrastructure. So if you are in the room, hold on just one minute, we're about to begin. I'll start in the same order.
judges: Schroeder, Wardlaw, Owens